IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL VALENTINE, an individual, and CRYSTAL VALENTINE, an individual,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>AUTO-OWNERS INSURANCE,<br><br>　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:22-cv-00815-RJS-CMR<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

Before the court is Plaintiffs Michael Valentine and Crystal Valentine's Motion for Partial Summary Judgment[1] and Defendant Auto-Owners Insurance's Motion for Summary Judgment.[2]

Upon moving into their newly constructed luxury home, the Valentines discovered serious defects and sued the home's builder and owner-seller, Alpine Design Consultants, LLC d/b/a GW Ventures, in the Third Judicial District Court for Summit County.[3]  Alpine Design tendered its defense to its Commercial General Liability (CGL) insurer, Auto-Owners, which defended Alpine Design subject to a Reservation of Rights.[4]  Ultimately, the state lawsuit was resolved when the Valentines and Alpine Design entered into a settlement agreement without Auto-Owners' consent.[5]  As part of the settlement, Alpine Design assigned its claims against

---

[1] Dkt. 16, *Plaintiffs' Motion for Partial Summary Judgment*.

[2] Dkt. 17, *Defendant's Motion for Summary Judgment*.

[3] Dkt. 16-2, Ex. 3, *Complaint* (*Case No. 190500227*).

[4] *See* Dkt. 16 at 4; Dkt. 17 at 5, 11.

[5] *See* Dkt. 16 at 4.

Auto-Owners to the Valentines.[6]  In December 2022, the Valentines filed the current case,

asserting claims for declaratory judgment, breach of fiduciary duty, breach of contract, and

breach of the implied covenant of good faith and fair dealing.[7]

In their motions for summary judgment, the parties dispute whether there is coverage for

damages to the Valentines' home under the CGL insurance policy (Policy) provided by Auto-

Owners to Alpine Design.[8]  Auto-Owners seeks a declaratory judgment that no coverage exists

under the Policy and, therefore, Auto-Owners owes no duty to indemnify.[9]  The Valentines seek

a declaratory judgment that coverage does exist under the Policy.[10]

The majority of the parties' briefs address whether the home's damages are covered

"occurrences" under the Policy not precluded by an exclusion.[11]  However, Auto-Owners

advances an additional argument: even if the damages are occurrences under the Policy not

barred by an exclusion, the Policy still does not provide coverage because Alpine Design and the

Valentines did not comply with two contract provisions.[12]  Specifically, they violated the: (1) the

Legal Action Against Us provision, which states Auto-Owners can be sued only to recover on

either an agreed settlement signed by Auto-Owners or "a final judgment against an insured

obtained after an actual trial;"[13] and (2) the Common Policy Conditions, which requires Auto-

---

[6] *See* Dkt. 17 at 24 (detailing Alpine Design's possible claims against Auto-Owners for bad faith conduct and breach of fiduciary duties in refusing to settle the Defects Litigation for under policy limits).

[7] Dkt. 2, *Complaint* at 19–23.

[8] *See* Dkt. 16-2, Ex. 1 (*Policy*).  Auto-Owners incorporates the Policy into their Motion for Summary Judgment as well.  *See* Dkt. 17 at 5–11.  The CGL Policy was renewed from November 18, 2016, to November 18, 2017.  *See* Dkt. 16-2, Ex. 2 *Renewed Policy*.

[9] Dkt. 17 at 1–2.

[10] Dkt. 16 at 2.  This would resolve their first cause of action for declaratory judgment.  Dkt. 2 at 19–20.

[11] *See generally* Dkt. 16 at 14–25; Dkt. 17 at 26–36.

[12] Dkt. 17 at 36–28.

[13] *Policy* at 37–38 § IV(3).

Owners to consent in writing to any transfer of the insured's rights and duties under the Policy.[14]
The Valentines do not contest that Alpine Design and the Valentines violated the Policy's plain
language.[15]  However, they argue the court should not apply straightforward contract
interpretation because the Valentines have pled a breach of fiduciary duty claim, a tort claim,[16]
and because Auto-Owners materially breached the contract first, relieving Alpine Design and the
Valentines of their duty to follow the contract terms.[17]  However, to overcome Auto-Owners'
Motion for Summary Judgment, the Valentines must present evidence demonstrating a genuine
dispute as to any material facts.[18]  They fail to do so here.  Because this issue is dispositive, the
court does not reach the other arguments presented in the parties' briefs.

For the reasons stated below, the Valentines' Motion for Partial Summary Judgment is
DENIED and Auto-Owners' Motion for Summary Judgment is GRANTED.

## BACKGROUND AND PROCEDURAL HISTORY[19]

In setting forth the undisputed facts, the court relies on the Stipulated Findings of Fact
that accompanied the settlement between the Valentines and Alpine Design in the underlying
state court proceedings.[20]  Both the Valentines and Auto-Owners rely on these facts without
objection in their summary judgment briefs.[21]

---

[14] *Id.* at 52 § F.

[15] Dkt. 19, *Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment* at 20.

[16] *See* Dkt. 19 at 19–20; Dkt. 24, *Plaintiffs' Reply Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment* at 12–13.

[17] *See* Dkt. 19 at 20 n.11; Dkt. 24 at 13.

[18] Fed. R. Civ. P. 56(a).

[19] This detailed factual background outlines the damages to the Valentines' home for clarity and posterity, though many facts are immaterial to the ruling provided.

[20] *See* Dkt. 16 at 4; Dkt. 17 at 11.

[21] *See* Dkt. 16-2, Ex. 6 (*Stipulated Findings of Fact*); Dkt. 17 at 12–24.

Alpine Design built a new home in Park City, Utah.[22]  Once construction was finished, Summit County issued a "Certificate of Occupancy Residential."[23]  In November 2016, the Valentines bought the home.  Prior to their purchase, they hired a professional home inspector who did not discover any major defects.[24]

However, after moving in, the Valentines began encountering "evidence of several latent defects."[25]  Specifically:

> There are four latent defects that were not discoverable by reasonable inspections prior to the purchase of the [r]esidence but only manifested themselves after the Valentines purchased the [r]esidence: (1) the roof's structural defects, (2) master suite floor settlement, (3) building management system defects, and (4) plumbing and lift station defects.[26]

These defects are the primary focus of the parties' motions for summary judgment.

### Roof Defects

The home's roof defects were caused by "the failure of [Alpine Design] and [its] subcontractors to build the [r]esidence's roof framing elements . . . according to the Plans and Specifications prepared by the [r]esidence's structural engineer."[27]  The home's structural plans "required Select Structural Douglas Fir timber to be used," but Alpine Design and its subcontractors instead opted to use "an unknown subgrade of timber of Douglas Fir No. 1 or less."[28]  Attempting to compensate for using a subpar grade of timber, Alpine Design and its

---

[22] *See* Dkt. 16 at 4; Dkt. 17 at 4.

[23] *See* Dkt. 16 at 4.

[24] *See* Dkt. 16 at 4–5; *Stipulated Findings of Fact* ¶ 35 ("While the [i]nspection identified areas where minor repairs were necessary, the [i]nspection did not identify any major defects existing in the [r]esidence.").

[25] *See* Dkt. 16 at 5 (quoting *Stipulated Findings of Fact* ¶ 42).

[26] *Stipulated Findings of Fact* ¶ 61.

[27] *Id.* ¶ 65.

[28] *Id.* ¶ 66.

subcontractors used "larger timber" than called for in the structural plans.[29]  Similarly, the structural plans "required 3x10 purlins to be installed along with 8x16 timbers."[30]  Alpine Design and its subcontractors omitted the purlins and 8x16 timbers but tried to compensate "by moving the ridge beam up to support the roof's TJI joints."[31]  These alterations "changed the load of the roof" and were not sufficient to provide adequate structural support for the roof.[32]

Since the Valentines purchased the home, the timber "has cracked, checked, shifted, waned, and twisted out of place."[33]  The timber truss deformation has caused cracking and bulging sheetrock throughout the home.[34]  The defects have rendered the roof structurally unsound and below industry standards.[35]  As a result, "[t]he roof's structural defects create a question of safety for the Valentines."[36]  The estimated cost for repairing the roof, which includes removing the existing timbers and reconstructing the roof's framing to comply with the structural plans, is $2,524,763.[37]

***Master Suite Floor Settlement***

The master suite floor settlement was caused by Alpine Design's subcontractor who failed to compact the gravel installed under the floor.[38]  After installation, Alpine Design "relied on the subcontractor and did not verify the gravel was compacted correctly with additional

---

[29] *Id.* ¶ 66.

[30] *Id.* ¶ 71.

[31] *Id.* ¶ 71.

[32] *Id.* ¶¶ 71, 75.

[33] *Id.* ¶ 68.

[34] *Id.* ¶ 69.

[35] *Id.* ¶ 76.

[36] *Id.* ¶ 78.

[37] *See id.* ¶¶ 80, 82 (detailing the components of the estimated cost to repair the roof's structural defects).

[38] *Id.* ¶ 84.

testing."[39]  As a result of this failure, the gravel has shifted and sunk, causing numerous defects throughout the home: a recurring crack in the master shower, the inability to open or close the master shower door, a crack in the master shower door, uneven floors, separation between floorboards, separation between the baseboard and the floor, and cracked sheetrock.[40] Additional settlement will continue to occur, causing further damage to the home, unless the defect is remedied.[41]  The estimated cost to remedy the settlement and repair the damage is $373,186.[42]

### *Building Management System Defects*

Alpine Design purchased and its subcontractor installed Thanos Controllers that were meant to operate the home's HVAC system, heated floors, and lighting.[43]  However, these controllers were beta units never intended to be sold or used in the United States and were unable to control the home's HVAC system and heated floors.[44]  Alpine Design did not know of these issues.[45]

Because the controllers were beta units incapable of operating the home's systems, the Valentines could not control the lighting and HVAC systems.  In the middle of the night, they were awakened by all the home's lights turning on.[46]  The Valentines also could not control the

---

[39] *Id.* ¶ 85.

[40] *Id.* ¶ 86.

[41] *Id.* ¶ 91.

[42] *See id.* ¶ 95 (detailing the components of the estimated cost to remedy the settlement and repair the damages caused by the shifting gravel).

[43] *Id.* ¶¶ 98, 99.

[44] *Id.* ¶ 103.

[45] *See id.* ¶¶ 102–04 (outlining the numerous steps and experts necessary to discover the defects).

[46] *Id.* ¶ 46.

temperature in the home, causing the AC to run in the middle of the winter, and the heat to run in the summer.[47]  These issues "made the home unfit for [] habitation."[48]

The Valentines, Alpine Design, and one of Alpine Design's subcontractors attempted to remedy the problem but were unsuccessful.[49]  In order to diagnose the problem, the Valentines had to work with the German manufacturer of the Thanos Controllers.[50]

The Valentines installed a new system from Ad Hoc, Inc. "to provide immediate and necessary relief" from the ongoing HVAC and lighting issues, but this system could not control the heated floors.[51]  The Valentines eventually replaced the Ad Hoc system with a Control4 system capable of controlling the HVAC system, the heated floors, and the lighting.[52]  These replacements cost the Valentines $24,496.[53]

### Plumbing and Lift Station Defects

Alpine Design and its subcontractors designed the home's original septic tank and plumbing system in a manner contrary to the International Plumbing Code's requirements.[54]  Additionally, Alpine Design's subcontractors improperly installed an unnecessary check valve

---

[47] *Id.* ¶¶ 49–50.

[48] *Id.* ¶ 107.  "On one occasion in the summer, Mr. Valentine came home to find the [r]esidence's temperature well above 90 degrees, with the Valentine's dog in visible distress.  Given this problem of extreme heat in the summer, the Valentines felt they could no longer leave their dog unattended in the [r]esidence for fear that the heat may cause harm to their pet."  *Id.* ¶¶ 51–52.

[49] *Id.* ¶ 101.

[50] *Id.* ¶ 102.

[51] *Id.* ¶ 105.

[52] *Id.* ¶ 106.

[53] *Id.* ¶ 108.

[54] *See id.* ¶¶ 110, 112 ("The International Plumbing Code requires septic systems to be gravity fed where possible.  The [r]esidence's original septic tank did not comply with the International Plumbing Code because it did not gravity feed any part of the [r]esidence's sewer system to the septic tank, relying instead on the lift station for all of the property's sewage.").

that prevented the lift stations from ejecting sewage.[55]  The septic tank eventually failed in

August 2020, resulting in sewage entering the home.[56]  It is unclear from the Stipulated Facts

whether the septic tank failure was due to the design of the plumbing system, the unnecessary

valve, or both in combination.  The Valentines hired an emergency services company to clean

the sewage and installed a septic tank that complies with the International Plumbing code.[57]  The

total cost for these remedies was $74,928.[58]

***Relevant Policy Provisions***

Two provisions of the Policy are at the heart of the court's decision today: the Legal

Action Against Us provision and the Common Policy Condition addressing assignment.  The

Legal Action Against Us provision states:

> No person or organization has a right under this Coverage Part:
> a.  To join [Auto-Owners] as a party or otherwise bring [Auto-Owners] into a 'suit' asking for damages from an insured; or
> b.  To sue [Auto-Owners] on this Coverage Part unless all of its terms have been fully complied with.
> A person or organization may sue [Auto-Owners] to recover on an agreed upon settlement or on a final judgment against an insured obtained after an actual trial; but [Auto-Owners] will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.  An agreed upon settlement means a settlement and a release of liability signed by [Auto-Owners], the insured and the claimant or the claimant's legal representative.[59]

The Policy also includes Common Policy Conditions, one of which contains a provision

regarding assignment: "[The insured's] rights and duties under this policy may not be transferred

---

[55] *Id.* ¶¶ 111, 114.

[56] *Id.* ¶¶ 113, 116.

[57] *Id.* ¶¶ 116–17.

[58] *Id.* ¶ 118.

[59] *Policy* at 36–37 § IV(3).

8

without [Auto-Owners'] written consent except in the case of death of an individual named insured."[60]

### *The Underlying Defects Litigation*

In May 2019, the Valentines initiated a lawsuit against Alpine Design and its managers in the Third Judicial District Court for Summit County.[61]  Alpine Design tendered its defense to Auto-Owners and, subject to a Reservation of Rights, Auto-Owners defended Alpine Design.[62]  After the close of discovery, the Valentines, Alpine Design, and Auto-Owners participated in mediation on March 10, 2022, but could not reach a settlement.[63]  The Valentines later offered to settle for less than the Policy limits of $1,000,000 per occurrence and $2,000,000 in the aggregate, but Auto-Owners refused this offer.[64]  Instead of proceeding to trial, the Valentines and Alpine Design entered into a settlement agreement without Auto-Owners.[65]  As part of the settlement, Alpine Design agreed to pay $187,500 and assign its claims against Auto-Owners to the Valentines.[66]  The settlement also included stipulated findings of fact.[67]  On September 8,

---

[60] *Id.* at 52 § F.

[61] Dkt. 16-2, Ex. 3.

[62] Dkt 16 at 4; Dkt. 17 at 5, 11.

[63] *See* Dkt. 16 at 4.  Auto-Owners argues all facts referencing the mediation and settlement process are inadmissible under Rule 408 of the Federal Rules of Evidence because "[d]iscussion of settlement and mediation provides no relevant or admissible evidence to assist this court's determination if there is coverage available for the property damages."  Dkt. 20, *Defendant's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment* at 3–4.  Rule 408 prohibits evidence of compromise offers and negotiations when used "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement."  Fed. R. Evid. 408(a).  However, "[t]he court may admit this evidence for another purpose."  *Id.* 408(b).  Here, the Valentines offer this evidence to demonstrate "Auto-Owners' actions in failing to settle the Valentines' claims below policy limits."  Dkt. 24 at 2.  Therefore, these facts are admissible under Rule 408 and the court will consider them.

[64] *See* Dkt. 16 at 2, 4 ("Following mediation, the Valentines made a final attempt to settle by offering to settle the Valentine Claim for an amount less than the Policy limits.").

[65] *Id.* at 4.

[66] *See id.* at 12; Dkt. 17 at 24 (detailing Alpine Design's possible claims against Auto-Owners for bad faith conduct and breach of fiduciary duties in refusing to settle the Defects Litigation for under policy limits).

[67] Dkt. 16 at 4; Dkt. 17 at 11.

2022, the Third Judicial District Court for Summit County entered Judgment in favor of the Valentines in the amount of $2,997,373.[68]

***Current Litigation***

On October 17, 2022, pursuant to Alpine Design's assignment, the Valentines issued a Demand for Indemnification to Auto-Owners.[69]  Auto-Owners refused the Demand, stating the claims were not covered by the Policy.[70]

The Valentines filed the present action on December 28, 2022, asserting four causes of action against Auto-Owners: declaratory judgment that the claims were covered by the Policy; breach of fiduciary duty; breach of contract; and breach of the implied covenant of good faith and fair dealing.[71]  On September 1, 2023, the parties filed cross-motions for summary judgment, each seeking declaratory judgment on the issue of whether the claims are or are not covered by the Policy.  Because declaratory judgment is only one of the four causes of action against Auto-Owners, the Valentines moves for partial summary judgment on that claim alone, leaving the breach claims for resolution later.[72]  Meanwhile, Auto-Owners moves for summary judgment on all claims because resolution of the coverage issue in their favor will necessarily eliminate the Valentines' breach claims.[73]

Upon full consideration of the parties' briefing, oral argument concerning the cross-Motions was heard on November 28, 2023, and the matter was taken under advisement.[74]

---

[68] Dkt. 16 at 12; Dkt. 17 at 24.

[69] Dkt. 16 at 12; Dkt. 17 at 25.

[70] Dkt. 16 at 12; Dkt 17 at 25.

[71] *See* Dkt. 2 at 19–23 (detailing causes of action for declaratory judgment, breach of fiduciary duty, breach of contract, and breach of the implied covenant of good faith and fair dealing).

[72] Dkt. 16 at 2; Dkt. 26, *Minute Entry for Proceedings Held on November 28, 2023.*

[73] Dkt. 17 at 2.

[74] Dkt. 26.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law."[75]  Parties must support their motions with evidence by "citing to particular parts of materials in the records . . . or []  showing that the materials cited do not establish the absence or presence of a genuine dispute."[76]  On a motion for summary judgment, the evidence and reasonable inferences are viewed in the light most favorable to the nonmoving party.[77]  However, the nonmovant must "make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof [at trial]."[78]  The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."[79]  If the nonmovant fails to do so, then the moving party is "entitled to a judgment as a matter of law."[80]  When reviewing cross-motions for summary judgment, the court evaluates each motion separately—"the denial of one does not require the grant of another."[81]

This matter is before the court on federal diversity jurisdiction,[82] so substantive issues are controlled by state law.[83]  The parties and the court agree Utah law governs.[84]  Under Utah law,

---

[75] Fed. R. Civ. P. 56(a).

[76] *Id.* 56(c)(1).

[77] *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

[78] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[79] *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992).

[80] *Celotex Corp.*, 477 U.S. at 323.

[81] *Bluell Cabinet Co. v. Sudduth*, 608 F.2d 431, 434 (10th Cir. 1979).

[82] *See* Dkt. 2 at 1–2.

[83] *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 712 (10th Cir. 2005) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

[84] *See Prager v. Campbell Cnty. Mem'l Hosp.*, 731 F.3d 1046, 1060 (10th Cir. 2013) ("In diversity cases, the substantive law of the forum state governs the analysis of the underlying claims, including specification of the applicable standards of proof . . . .") (citation omitted).

"[i]nterpretation of an insurance contract presents a question of law."[85]  "An insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts."[86]  Courts "construe insurance contracts by considering their meaning to a person of ordinary intelligence and understanding, . . . in accordance with the usual and natural meaning of the words, and in light of existing circumstances, including the purpose of the policy."[87]

## ANALYSIS

The Valentines move for partial summary judgment, seeking a declaration that their claims are covered by the terms of the Policy,[88] while Auto-Owners moves for summary judgment on all causes of action, seeking a declaration that there is no coverage under the Policy.[89]  Even assuming the court finds one or more of the Valentines' claims are covered occurrences under the Policy not precluded by an exclusion, Auto-Owners argues the Policy still does not provide coverage because Alpine Design and the Valentines did not comply with two of the Policy's contract provisions.[90]  The court first details the relevant Policy provisions and Auto-Owners' argument, before addressing the Valentines' arguments against applying the plain language of the Policy.

---

[85] *Viking Ins. Co. of Wis. v. Coleman*, 927 P.2d 661, 663 (Utah Ct. App. 1996).

[86] *Alf v. State Farm & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993).

[87] *Lopez v. United Auto. Ins. Co.*, 2012 UT 10, ¶ 17, 274 P.3d 897 (quoting *Doctors' Co. v. Drezga*, 2009 UT 60, ¶ 12, 218 P.3d 598).

[88] Dkt. 16 at 2.

[89] Dkt. 17 at 2.

[90] *Id.* at 36–38.

### I.  The Policy Provisions

Auto-Owners argues the Valentines are not entitled to indemnification under the Policy because Alpine Design and the Valentines violated two Policy provisions: the Legal Action Against Us provision and the Common Policy Condition regarding assignment.[91]  The Legal Action Against Us provision of the Policy states Auto-Owners can be sued to recover only on either: (1) an agreed settlement signed by Auto-Owners itself or (2) "a final judgment against an insured obtained after an actual trial."[92]  Because the settlement agreement in the Third Judicial District Court for Summit County was not signed by Auto-Owners and the Judgment was not obtained after a trial, Auto-Owners contends "[t]here was no compliance with the coverage terms under this part of the Policy."[93]  The Common Policy Condition addressing assignment states "[the insured's] rights and duties under this policy may not be transferred without [Auto-Owners'] written consent except in the case of the death of an individual named insured."[94]  Because Auto-Owners never provided written consent for Alpine Design to transfer its rights to the Valentines, Auto-Owner argues Alpine Design violated the Policy Conditions.[95]  Because Alpine Design and the Valentines did not comply with the unambiguous, plain meaning of the contractual language, Auto-Owners asserts coverage is precluded.

Under Utah law, "[a]n insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts."[96]  To determine whether coverage exists under a policy, a court must apply standard contract

---

[91] *Id.*

[92] *Policy* at 37–38 § IV(3).

[93] Dkt. 20 at 16.

[94] *Policy* at 52 § F.

[95] Dkt. 17 at 37–38; Dkt. 20 at 16.

[96] *Alf*, 850 P.2d at 1274.

interpretation principles.[97]  The Valentines do not dispute that the plain language of the Policy was violated.  The settlement was not signed by Auto-Owners, violating the Legal Action Against Us provision,[98] and Auto-Owners did not provide written consent for the assignment of Alpine Design's rights under the contract, violating the Common Policy Conditions.[99] Therefore, the Policy's provisions, if enforced, would preclude coverage and bar this lawsuit.

## II.   The Valentines' Arguments

The Valentines advance two arguments why the court should not apply straightforward contract interpretation and preclude coverage.  First, the Valentines argue the court should apply Judge Tena Campbell's analysis in *Rupp v. Transcontinental Insurance Co.*,[100] a 2008 decision in this court, to find that the Valentines' pled breach of fiduciary duty prevents contract law from governing here.[101]  Second, the Valentines assert Auto-Owners materially breached the contract first, thereby relieving Alpine Design and the Valentines of their duty to follow the contract terms.[102]  Both arguments fail here because the Valentines do not provide sufficient evidence of either a breach of fiduciary duty or a prior material breach of contract to demonstrate a genuine issue of material fact that would necessitate a trial.  "Conclusory allegations, general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment."[103]

---

[97] *See Utah Farm Bureau Ins. Co. v. Crook*, 1999 UT 47, ¶ 5, 980 P.2d 685 ("Insurance policies are generally interpreted according to rules of contract interpretation."); *Benjamin v. Amica Ins. Co.*, 2006 UT 37, ¶ 14, 140 P.3d 1210 ("[I]f the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language.") (internal quotation marks omitted).

[98] Dkt. 18-4, *Settlement and Assignment Agreement* at 10–12.

[99] *See* Dkt. 17 at 38 ("Auto-Owners did not provide any written consent to permit [Alpine Design] to transfer or assign [its] rights to Plaintiffs under the [P]olicy.").

[100] 627 F. Supp. 2d 1304 (D. Utah 2008).

[101] *See* Dkt. 19 at 19–20; Dkt. 24 at 12–13.

[102] *See* Dkt. 19 at 20 n.11; Dkt. 24 at 13.

[103] *Pasternak v. Lear Petrol. Expl., Inc.*, 790 F.2d 828, 834 (10th Cir. 1986).

14

### A.  Breach of Fiduciary Duty

The Valentines rely heavily on *Rupp*, where the Rupps brought a personal injury suit in Utah state court against a highway construction company following a severe car accident in a construction zone.[104]  After repeated attempts to settle were rejected by the construction company's CGL insurers, the insured and the Rupps settled without the insurers' consent and the insured assigned its rights against the insurers to the Rupps.[105]  When the Rupps removed the case to federal court asserting various breaches of duties,[106] the insurers moved for summary judgment.[107]  The crux of the insurers' argument was that, because "[the insured] did not comply with the policy requirement that it obtain consent to settle or, in the alternative, obtain an enforceable judgment through a trial on the merits," there was no coverage, so the insured had nothing of value to assign and the insurers could not be liable for breaching any duties.[108]  The policy provision at issue in *Rupp* mirrors the Legal Action Against Us provision at issue here.[109]

In its analysis, the *Rupp* court first noted bad faith breach of duty claims "lie[] in tort, not contract."[110]  Second, after analyzing Utah precedent and persuasive case law from other states,

---

[104] *Rupp*, 627 F. Supp. 2d at 1308.

[105] *Id.* at 1312.  The court notes that in its Reply, Auto-Owners argued *Rupp* was distinguishable from the present case because "Defendant in the Defect Litigation complied with its duty to defend [Alpine Design].  There has been no breach of a duty to defend [Alpine Design]."  Dkt. 23, *Defendant's Reply Memorandum in Support of its Motion for Summary Judgment* at 16.  To be clear, the insurers in *Rupp* also provided a defense to the insured but repeatedly refused to settle.  *Rupp*, 627 F. Supp. 2d at 1309.  "The duty to accept settlement offers within policy limits when there is a substantial likelihood of a judgment in excess of the [] insurer's policy limits . . . is part of the insurer's overall duty to defend."  *Id.* at 1316.

[106] Notice of Removal, *Rupp v. Transcon. Ins. Co.*, 627 F. Supp. 2d 1304 (D. Utah 2008) (No. 2:07-cv-00333-TC), Dkt. 2.

[107] *Rupp*, 627 F. Supp. 2d at 1316.

[108] *Id.* at 1316–17.

[109] *Compare id.* at 1309 ("No legal action shall be brought against us unless you have fully complied with all the terms of this policy and the amount of your obligation to pay has been finally determined either by: a. Judgment against you after actual trial; or b. Written agreement between us, you and the claimant."), *with Policy* at 37–38 § IV(3) ("A person or organization may sue us to recover on an agreed upon settlement or on a final judgment against an insured obtained after an actual trial . . . .").

[110] *Rupp*, 627 F. Supp. 2d at 1317.

15

the court predicted the Utah Supreme Court would conclude it is not necessary for "an insured facing the significant likelihood of an excess judgment . . . to take the case to trial before a cause of action for bad faith accrues."[111]   After summarizing *Rupp*'s holding, the Valentines argue it applies here.  The entirety of the Valentines' application reads:

> Because Auto-Owners breached its fiduciary duties to [Alpine Design], [Alpine Design was] free to assign [its] claims against Auto-Owners to the Valentines as part of a settlement of the Valentines' claims against [Alpine Design].  Thus, Auto-Owners cannot escape liability based solely on the clauses it has inserted in its policies prohibiting settlement and assignment without Auto-Owners' consent.[112]

As an initial matter, *Rupp* is persuasive authority; this court is not bound by it.  Here, binding precedent would come from the Utah Supreme Court or the Tenth Circuit.[113]  Because the Utah Supreme Court has not yet addressed the issue of whether the Legal Action Against Us provision could serve as a bar to a bad faith claim, the *Rupp* court proffered its best prediction.[114]  While it is persuasive authority, this court is not bound to follow its conclusions.

However, even assuming the Utah Supreme Court would adopt *Rupp*'s holding, *Rupp* can be meaningfully distinguished from the current case.  First, the insurers in *Rupp* never asserted that the potential negligence of the insured which led to the car accident was not covered by its policies.[115]  Instead, the insurers' planned trial defense was to argue either that the insured were

---

[111] *Id.* at 1324.

[112] Dkt. 19 at 20; *see also* Dkt. 24 at 13 (including the same two sentences of application).

[113] Even if this were not a case of Utah law, the court still would not be bound by *Rupp*, because "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."  *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quotation marks and citation omitted).

[114] *See Rupp*, 627 F. Supp. 2d at 1324 ("For these reasons, the court predicts that if the Utah Supreme Court were to face the issue here, it would hold that an insured facing the significant likelihood of an excess judgment is not required to take the case to trial before a cause of action for bad faith accrues.  Accordingly, that is what this court holds.").

[115] *See generally* Answer to Complaint, *Rupp v. Transcon. Ins. Co.*, 627 F.Supp.2d 1304 (D. Utah 2008) (No. 2-07-cv-00333-TC), Dkt. 30.

not casually negligent or that the contributory negligence of Ms. Rupp, the driver of the car, was greater than that of the insured.[116]  Here, Auto-Owners has continuously asserted its assessment that the damages to the Valentines' home are not covered by the Policy.[117]

Second, the record before the *Rupp* court enabled it to conclude there were genuine issues of material fact requiring a trial on the merits.  The court was presented with evidence that five out of six legal experts who evaluated the case determined there was a real risk of a significant verdict in excess of policy limits.[118]  This included the initial evaluation by the insurers' own claims manager.[119]  After multiple attempts to settle the case, the insured contracted with an independent attorney to evaluate the insured's potential exposure at trial.[120]  He concluded that, particularly because of the punitive damages claim, there was a possibility for an excess verdict.[121]  The insured forwarded this assessment to the insurers, along with a warning that "it believed they had breached their fiduciary duty by refusing to accept a reasonable settlement offer within the policy limits in light of respectable opinions that an excess judgment was likely."[122]  In light of the record presented, the *Rupp* court concluded "[t]he question of whether the insurers acted in bad faith 'turn[ed] on factual issues to be determined by a jury after consideration of all the evidence.'"[123]

---

[116] *Id.* at 16.

[117] *See* Dkt 16 at 4, 12; Dkt. 17 at 5, 11, 25 (detailing Auto-Owners' Reservation of Rights and repeated assertions that the damages were not covered by the Policy).

[118] *Rupp*, 627 F. Supp. 2d at 1325–26.

[119] *Id.* at 1310.

[120] *Id.* at 1311.

[121] *Id.*

[122] *Id.* at 1312.

[123] *Id.* at 1325 (quoting *Campbell v. State Farm Mut. Auto. Ins. Co.*, 840 P.2d 130, 132 (Utah Ct. App. 1992)).

Here, in contrast, the Valentines rely in their briefing on a single conclusory statement—"Auto-Owners breached its fiduciary duties to [Alpine Design]" [124]—to argue that *Rupp*'s analysis ought to apply. But, in contrast with *Rupp*, the Valentines offer little evidence to support this statement. Indeed, the Valentines do not even identify what conduct constituted Auto-Owners' breach of fiduciary duties. Their Complaint details specific conduct,[125] but a party opposing summary judgment cannot resist a summary judgment motion based only on what is in its pleadings.[126] Instead, the party must "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant."[127]

Even if the court focuses on the duty to settle highlighted in *Rupp*, the Valentines have not met their burden. To demonstrate a breach of the duty to settle, the Valentines must show: (1) there was a substantial likelihood of an excess verdict; (2) Auto-Owners refused to settle within policy limits; and (3) it was unreasonable for Auto-Owners to reject the settlement offer.[128] The Valentines did provide evidence Auto-Owners rejected a within-policy-limits settlement offer, but they did so within their facts section and relied on the court to connect the dots.[129] However, the Valentines have presented no evidence there was a substantial likelihood

---

[124] Dkt. 19 at 20.

[125] *See* Dkt. 2 at 21 ("Auto-Owners breached its heightened and fiduciary duties when it failed to (i) fairly, reasonably, and diligently investigate the validity of the Defect Litigation Claims; (ii) indemnify [Alpine Design], or the Valentines under the Assignment, for the valid claims; and (iii) settle the claim within the Policy limits as offered by the Valentines.").

[126] *Celotex Corp.*, 477 U.S. at 325.

[127] *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation and citations omitted).

[128] *See UMIA Ins., Inc. v. Saltz*, 2022 UT 21, ¶ 47, 515 P.3d 406 ("[A]n insurer has a duty to accept a settlement offer at or below policy limits if there is a substantial likelihood of an excess verdict."); *Campbell*, 840 P.2d at 138 ("The test of the insurer's conduct is one of reasonableness.").

[129] *See* Dkt. 24 at 2 ("[B]ecause Auto-Owners has attempted to invoke the Policy's provisions prohibiting assignment absent Auto-Owners' consent, Auto-Owners' actions in failing to settle the Valentines' claims below policy limits are relevant to whether Auto-Owners[] breached the Policy and its duties to [Alpine Design].").

of a verdict in excess of policy limits or that it was unreasonable for Auto-Owners to reject the settlement offer. The rejected settlement offer alone is not enough at summary judgment.

Finally, *Rupp* addressed the Legal Action Against Us provision of the Policy, but Auto-Owners does not rely solely on this provision. Instead, it argues the Valentines and Alpine Design also did not comply with the prohibition against assignment absent written consent in the Common Policy Conditions.[130] By arguing that no contract provision can serve as a bar where there is a bad faith claim against the insurer, the Valentines suggest *Rupp*'s logic should be extended to reach this clause as well.[131] However, this argument is not clearly presented to the court.

To overcome Auto-Owners' motion for summary judgment, the Valentines must do more than simply state Auto-Owners breached its fiduciary duties to the insured. The Valentines failed to adequately meet their burden under Rule 56.[132] If the court were to rule in the Valentines' favor, it would mean simply pleading a breach of fiduciary duty claim while providing no evidentiary support would be sufficient to defeat an insurer's motion for summary judgment invoking policy provisions limiting coverage. The established law requires more.

---

[130] Dkt. 17 at 37–38; Dkt. 20 at 16.

[131] *See* Dkt. 19 at 20 ("Because Auto-Owners breached its fiduciary duties to [Alpine Design], [Alpine Design was] free to assign [its] claims against Auto-Owners to the Valentines as part of a settlement of the Valentines' claims against [Alpine Design]. Thus, Auto-Owners cannot escape liability based solely on the clauses it has inserted in its policies prohibiting settlement and assignment without Auto-Owners' consent.").

[132] If the Valentines felt they did not have sufficient discovery to provide the court with evidence of a breach of fiduciary duty, they could have invoked Fed. R. Civ. P. 56(d), which provides "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

## B.  First Breach Rule

The Valentines assert an additional reason coverage is not barred by the Policy's

provisions: Auto-Owners materially breached the contract first.  The full extent of the

Valentines' invocation of the defense is the following:

> Moreover, even if the claims did sound in contract, the policy provisions relied
> upon by Auto-Owners to invalidate the Stipulated Findings of Fact and
> Assignment would not be enforceable under the First Breach Rule.  *See Cross v.
> Olsen*, 2013 UT App 135, ¶ 25, 303 P.3d 1030 ("[U]nder the first breach rule a
> party guilty of a substantial or material breach of contract cannot complain if the
> other party thereafter refuses to perform.  He can neither insist on performance by
> the other party nor maintain an action against the other party for a subsequent
> failure to perform.").[133]

To adequately assert the first breach rule, the Valentines must identify the four elements

of a breach of contract: "(1) a contract, (2) performance by the party seeking recovery, (3) breach

of the contract by the other party, and (4) damages."[134]  They then must establish the materiality

of the breach, because "[o]nly a material breach will excuse further performance by the non-

breaching party."[135]  "Whether a breach of contract constitutes a material breach is a question of

fact [and] [t]herefore, the issue will ordinarily be resolved by the fact finder, and summary

judgment should be granted with great caution."[136]

However, as demonstrated by the brevity of the quoted section above, the Valentines

offer no evidence to support their first breach rule argument.  They do not identify the conduct

---

[133] Dkt. 16 at 13; *see also* Dkt. 19 at 20 n.11 ("Even if the claims did sound in contract rather than tort, the First Breach Rule would apply to alleviate any requirement to comply with the policy terms after Auto-Owners breached its duties to [Alpine Design].") (citing *Cross v. Olsen*, 2013 UT App 135, ¶ 25, 303 P.3d 1030).

[134] *Am. West Bank Members, L.C. v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224 (citation omitted).  In their Complaint, the Valentines allege "Auto-Owners breached the terms of the Policy by refusing to indemnify the Valentines for the Judgment."  Dkt. 2 at 22.  However, as discussed earlier, a party opposing summary judgment must "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671 (internal quotation and citations omitted).

[135] *Cross*, 2013 UT App 135, ¶ 26 (citing *McArthur v. State Farm Mut. Auto. Ins. Co.*, 2012 UT 22, ¶ 28 n.7, 274 P.3d 981).

[136] *Id.* ¶ 29 (citations and internal quotation marks omitted).

constituting a breach of contract.  Even if the court assumes that Auto-Owners' refusal to

indemnify is a breach of the contract because the Valentines adequately proved the existence of

one or more occurrences not barred by any exception,[137] the Valentines' briefs still entirely fail

to address the materiality of the breach.  The court cannot serve as an advocate to divine an

argument a party does not advance itself, thereby depriving the opposing party of the opportunity

to address the arguments.[138]

---

[137] The Valentines likely demonstrated coverage exists for the master suite floor settlement.  The master suite floor settlement is an occurrence under the Policy because the faulty work was done entirely by a subcontractor.  In *Auto-Owners Ins. Co v. Fleming*, the Tenth Circuit held "[t]he natural results of an insured's negligent and unworkmanlike construction do not constitute an occurrence triggering coverage under a CGL policy." 701 F. App'x 738, 741 (10th Cir. 2017) (citations omitted).  However, the court laid out two possible exceptions to the general rule: (1) "where defective workmanship causes damage to property other than the work product itself" and (2) "where damage is caused by 'the negligent acts of [the insured's] subcontractors.'" *Id.* at 742 (citations omitted).  While the roof defects, plumbing system defects, and building management system defects all involved faulty work done by both Alpine Design and its subcontractors, the undisputed facts show that the master suite floor settlement was entirely due to the work of a subcontractor.  *Stipulated Findings of Fact* ¶ 84.  Coverage for this occurrence is not barred by an exclusion.  Though other exclusions were argued in the briefs, by oral argument, Auto-Owners argued only exclusion (2)(l) prohibited coverage. Dkt. 26.  Exclusion (2)(l) states the Policy "does not apply to . . . '[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" *Policy* at 30 § I(2)(l).  Both parties agree that the plain language of the exclusion applies here but the Valentines argue exclusion (2)(l) is in conflict with the exception to exclusion (2)(j)(7) and therefore must be construed against the drafters and in favor of coverage.  Exclusion (2)(j)(7) states the Policy "does not apply to . . . '[p]roperty damage' to [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." *Id.* at 30 § I(2)(j)(7).  However, exclusion (2)(j) also includes an exception that "Paragraph (7) . . . does not apply to 'property damage' included in the 'products-completed operations hazard.'" *Id.* at 30 § I(2)(j).  "An ambiguity in a contract may arise (1) because of vague or ambiguous language in a particular provision or (2) because two or more contract provisions, when read together, give rise to different or inconsistent meanings, even though each provision is clear when read alone." *Sandt*, 854 P.2d at 523.  If the exception to exclusion (2)(j)(7) exists to provide coverage after the work is completed, as Auto-Owners asserts in its own brief, then exclusion (2)(l), which writes that coverage back out of the Policy, is in conflict.  *See* Dkt. 20 at 14 ("The effect of exclusion (j)(7) when combined with the 'products-completed operations hazard' 'is to exclude coverage for the cost of restoring, repairing, or replacing faulty workmanship on the part of the insured, its contractors, and subcontractors . . . while the work is ongoing but to provide coverage for damage to property that arises out of the faulty workmanship after the work is completed or abandoned.'") (quoting *Auto-Owners Ins. Co. v. Timbersmith, Inc.*, No. 2:12-CV-00786, 2016 WL 3356800, at *5 (D. Utah June 15, 2016)).  Auto-Owners' interpretation of the Policy would mean eliminating the exception to (2)(j)(7) would have no effect on what the Policy covers, rendering the exception to the exclusion surplusage.  While each provision on its own is clear, reading them together demonstrates the inconsistency.  Utah law provides "if an insurance contract has inconsistent provisions, one which can be construed against coverage and one which can be construed in favor of coverage, the contract should be construed in favor of coverage." *Sandt*, 854 P.2d at 523 (citations omitted).  Therefore, exclusion (2)(l) would not preclude coverage here.

[138] *Butler v. Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1148 (10th Cir. 2023) ("We agree that a district court should not grant a motion for summary judgment on a ground not raised by the movant without at least providing notice and an opportunity to respond.").

Moreover, the court does not find *Cross v. Olsen* persuasive authority here.  *Cross* is not an insurance law case, but instead addresses a breach of a settlement agreement's terms.[139]  The court is unaware of a Utah case where the first breach rule was extended to the insurance coverage context, nor do the Valentines cite one.  In the absence of binding case law, this court will not be the first to extend the first breach rule to the insurance coverage context based solely on two sentences of argument unsupported by any evidence.

## CONCLUSION

For the reasons stated above, the Valentines' Motion for Partial Summary Judgment[140] is DENIED and Auto-Owners' Motion for Summary Judgment[141] is GRANTED.  Specifically, the court finds Alpine Design and the Valentines did not comply with two of the Policy's provisions, so there is no coverage for the home's damages.  The Clerk of Court is directed to close the case.

SO ORDERED this 5th day of February 2024.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[139] *Cross*, 2013 UT App 135, ¶ 2.

[140] Dkt. 16.

[141] Dkt. 17.